Mary Cox as Administrator of the Estate of Dean Cox, Deceased, Plaintiff-Appellant, v. Frank Shupe, Jack Hogue and Lloyd Gumbrell, Defendants-Appellees.

Gen. No. 63–F–26.

Fourth District.

May 28, 1963.

Ryan and Heller, of Mattoon, for appellant.

Wham & Wham, of Centralia, for appellees.

HOFFMAN, JUSTICE.

This case comes to this court on the pleadings. It stems from an attempt by plaintiff to place dram shop liability upon an unincorporated association of individuals who operated a bar as the "Albion Moose Lodge."

A certain individual who is alleged to have become intoxicated at the lodge collided with and killed plaintiff's intestate on August 29, 1955. Thereafter, plaintiff "fought the jungle of the unincorporated association" through four amended complaints over a period of 7 years in an effort to bring her action to court.

Plaintiff's first complaint was filed February 3, 1956 against Albion Moose Lodge, a corporation. This complaint was stricken upon a showing that the lodge was merely an unincorporated association of individuals. Plaintiff's first amended complaint was filed on June 5, 1956 against Frank Shupe, Jack Hogue and Lloyd Gumbrell, "Trustees of Albion Lodge No. 621, Loyal Order of Moose." The trustees moved against this complaint on the grounds that they were not the owners of the real estate and that there were other

necessary parties to the suit. This motion was denied on October 15, 1956, but a subsequent motion to strike as surplusage the words "Trustees of Albion Moose Lodge No. 621, Loyal Order of Moose" was allowed on January 21, 1957. This left a complaint against Shupe, Hogue and Gumbrell, individually, charging them with the ownership of the dram shop, and said individuals shortly thereafter filed an answer.

On October 7, 1957 plaintiff moved to file a second amended complaint so as to make all members of the lodge (except Shupe, Hogue and Gumbrell) parties defendant as "Unknown Members of Albion Moose Lodge No. 621, Albion, Illinois, a voluntary unincorporated association of individuals." This motion was denied November 12, 1957.

On March 14, 1958, plaintiff obtained cancellation of a trial setting and was granted leave to file a further amended complaint, and, on July 1, 1958 plaintiff's second amended complaint was filed. This complaint contained three counts, Counts I and II praying "Judgment jointly and severally against the defendants Frank Shupe, Jack Hogue and Lloyd Gumbrell, Trustees of the Albion Moose Lodge No. 621," etc. The third count was designated a "Separate Action in Chancery" which alleged that the association members were too numerous for personal service and for that reason plaintiff had no adequate remedy at law. It charged that the action could be defended on behalf of the entire membership by Shupe, Hogue and Gumbrell, Trustees, and prayed that service upon the association members be excused and that the judgment sought be a lien upon the association premises. Defendant trustees moved against this complaint by alleging that necessary parties were omitted and defendants were not proper parties. This motion was allowed, and the second amended complaint was stricken on July 28, 1958.

415

The third amended complaint was filed February 16, 1959. It contained three counts at law and a separate one in chancery. For the first time the bartender at the Lodge, who was also a member, one Joseph Woods, was sought to be made a defendant, and he was duly served individually. The counts at law prayed for judgment against the individual defendants. The chancery action alleged that plaintiff was in doubt as to whom she was entitled to seek redress from, that it would be impractical to bring all members of the association before the court, that some members were unknown, and that plaintiff had no remedy except in chancery. It was further alleged that the four individuals, Shupe, Hogue, Gumbrell and Woods, were representative of the membership and that the members could be adequately defended by these individuals. Plaintiff prayed as before.

The defendants moved to strike this third amended complaint upon the grounds that it did not show that defendants were legally responsible for the acts of the Lodge, or that they had any right or duty to represent the membership, and that there was a lack of necessary parties. Defendants further argued that because the statute of limitations had run, additional parties could not be added. These motions were argued and taken under advisement on June 17, 1960, and subsequently allowed by the court on March 17, 1961.

Thereafter, on May 5, 1961, plaintiff moved to file a fourth amended complaint. This complaint was similar to the third amended complaint except that it included an attempt to qualify the bringing in of additional parties defendant under Section 46(4) of the Practice Act. Plaintiff alleged that the previous failure to join Joseph Woods and the Trustees, Shupe, Hogue and Gumbrell, in their trust capacities, was due to inadvertence. It was stated that each of the parties

416

had actual notice of the pendency of the suit. This fourth amended complaint, similarly to the third amended complaint, contained an action at law, and also a separate action in chancery. In the action at law it was stated that the four named defendants, Shupe, Hogue, Gumbrell and Woods, were the beneficial owners of the premises and were representative of the membership of the voluntary unincorporated association. In the chancery action it was alleged that the lodge contained numerous members, that it would be impractical and impossible to bring before the court all members, that the names of all the members were unknown, and that to require the plaintiff to bring in every member would deprive her of her remedy. It further stated that the question was one of common interest and that the individuals named in their individual capacity and as trustees should be considered as representing the entire unincorporated association.

Plaintiff's motion to file this fourth amended complaint was denied on June 29, 1962. Plaintiff then elected to stand upon said motion and declined to otherwise amend, plead or proceed. The court thereupon entered the final order against plaintiff which is now before this court.

In this appeal plaintiff relies upon two points: (1) that the court erred in refusing to allow Joseph Woods to be added as an additional defendant, and (2) that the court erred in denying plaintiff's separate action in chancery.

The defendants contend that the plaintiff was not entitled to add the bartender and was not entitled to add the three trustees in their trust capacities because the statute of limitations had run against them. The plaintiff argues that Section 46(4) of the Practice Act (Ill Rev Stats 1961, c 110, § 46(4)) authorizes the adding of parties even after the statute of limitations had run.

417

This statute provides that a cause of action against a person not originally named as a defendant is not barred by a statute of limitations if, among other things, failure to join the person as a defendant was inadvertent.

It is clear in the record in this case that the additional defendant, Joseph Woods, was known to the plaintiff as early as June 23, 1956, which was before the statute of limitations had run against him. Likewise, the defendants, in their capacity as trustees were known as early as June 5, 1956 when the first amended complaint was filed against them as "trustees." It was not until well after the running of the statute of limitations that any effort was made to add these parties and the earliest attempt was when the plaintiff filed her third amended complaint on February 16, 1959. This was after the statute of limitations had run and over 2½ years after the plaintiff knew of these additional parties. Was the failure to join these new parties "inadvertent" under Section 46(4)?

In Illinois there are two very recent cases which bear upon this point; Silver v. Lee Shell Equipment Corp., 31 Ill App2d 266, 175 NE2d 287, and Robinson v. Chicago Nat. Bank, 32 Ill App2d 55, 176 NE2d 659. In the Silver case suit was started against an alleged corporation in March, 1954. In February, 1960, after the five-year statute of limitations had run, plaintiff filed an amended complaint adding two individuals as defendants, one of whom had previously served as agent of the corporation. The Appellate Court (First Dist., Third Div.) held that under Section 46(4) plaintiff was entitled to add the individuals. The court referred to Webster's New International Dictionary, Second Ed. in defining "inadvertent," and stated that the dictionary defined it as "not turning the mind to a matter; heedless, negligent; inattentive; . . ." The court thought the word "inadvertent" would include the situation in that case.

In the Robinson case suit was filed against the defendant trustee for personal injuries received in a building to which the trustee had title. The suit was filed in January, 1959, interrogatories were issued, and in April, 1959 the defendant informed the plaintiff of the name of the beneficiary of the trust and the name of the manager of the building. Seven months later, in November, 1959, one month after the two-year statute of limitations had run, the plaintiff added the beneficiary of the trust and the manager of the building. These defendants filed a motion to dismiss based on the statute of limitations and judgment was entered in their favor.

The inadvertence in the Robinson case was explained by failure of the attorney to give attention to the file after he had the information. Plaintiff claimed that under Section 46(4) she was entitled to make these parties defendant and that the failure to join them previously was "inadvertent."

The Appellate Court (First Dist. Second Div.) affirmed the dismissal as to the new defendants stating that the facts constituting the inadvertence must be in existence from the time of filing the complaint to the time the amendment is presented. Thus, failure to act after knowledge of the facts was decisive. The court pointed out that these parties were known to plaintiff on April 8, 1959 but that plaintiff did nothing until November of that year. The court said "inadvertent" meant excusable ignorance and not excusable failure to act after facts are discovered. The court stated that the plaintiff should have acted with reasonable diligence after the identity of the two defendants became known.

We make mentioned here of the case of Kohlhaas v. Morse, 36 Ill App2d 158, 183 NE2d 16, decided by this court in 1962. Although we held in that case that Section 46(4) of the Practice Act was not involved, we there decided that a complaint was subject to dis-

missal for failure to use reasonable diligence in having the defendants served.

In the case at bar the plaintiff, after having knowledge of the additional defendants, delayed for more than two years before making any effort to bring them into the case. We believe that such delay goes far beyond the inadvertence which should be allowed under the statute. To adopt plaintiff's reasoning would, theoretically, place no time limit upon a suit, and would nullify any protection against stale claims. We hold, under the facts of this case, that plaintiff's failure to add the additional parties was not inadvertent, but was inexcusable failure to act with reasonable diligence after defendants' identity became known.

Plaintiff also argues that the court erred in denying her leave to file a separate action in chancery. She argues that the personal service upon Shupe, Hogue and Gumbrell, individually, constituted service upon all members of the unincorporated association, and that she should be permitted to enforce any judgment against the association property.

We have carefully examined many of the cases involved. It has been held in a number of these cases that where the parties are numerous and it is impracticable to bring all before the court, service upon a party, who acts for other members of the association as well as themselves, will be sufficient service upon the whole. Guilfoil v. Arthur, 158 Ill 600, 41 NE 1009; Warfield-Pratt-Howell Co. v. Williamson, 233 Ill 487, 84 NE 706; Carpenters' Union v. Citizens' Committee, 333 Ill 225, 164 NE 393; Am. Percheron Horse Breeders' Ass'n v. Importers' Ass'n, 114 Ill App 136; Chicago Typographical Union No. 16 v. A. R. Barnes & Co., 134 Ill App 11; Biller v. Egan, 290 Ill App 219, 8 NE2d 205. This rule, with only two possible exceptions, has never been extended to law cases. And,

while it has been sought to extend the rule to lawsuits, the courts have resisted such extension.

This court in Kingsley v. Amalgamated Meat Cutters, etc., 323 Ill App 353, 55 NE2d 554 said, at page 356 of 323 Ill, at page 555 of 55 NE2d: "At common law an unincorporated voluntary association, such as a labor union, cannot sue or be sued by its association name. It is neither a natural nor artificial person and has no legal existence separate and distinct from its individual members. (Citations.)" In Southerland v. Copeland, 350 Ill App 313, 112 NE2d 733, it was said at page 316 of 350 Ill App, at page 734 of 112 NE2d: "It is recognized by both plaintiffs and defendant that an unincorporated association may not maintain an action at law in its own name. When such an association sues at law it must sue in the name of all the members comprising it, however numerous they may be." See also Collins v. Barry, 11 Ill App2d 119, 136 NE2d 597. We note that in the recently revised edition of Nichols Illinois Civil Practice, the author, at sec 281, acknowledges that the so-called class suit or representative suit whereby one sues or is sued on behalf of members of a class or group is an invention of equity, and states categorically that "There is no authority for an action at law against a defendant in a representative capacity or for an action at law by a plaintiff in a representative capacity."

The two exceptions above noted are the cases of Fitzpatrick v. Rutter, 160 Ill 282, 43 NE 392, and Bayci v. Rango, 304 Ill App 203, 25 NE2d 1015. We do not consider these authorities to be ruling precedents in a law case. In Fitzpatrick the comments pertaining to the rule involved here were dicta, for the court had already decided that the defendant was estopped from denying its corporate existence. In Bayci the rule was only applied to prevent an utter failure of justice.

421

Turning to plaintiff's proposed pleading in her separate action in chancery, we note that the only chancery relief prayed for is an attempt to have the dram shop judgment made a lien upon the lodge premises. There is no basis for applying the chancery rule sought by plaintiff merely because a plaintiff denominates her action "In Chancery." Naming doesn't make it so. Were such the case, any time someone desired to avoid the law's requirements he could just plead "In Chancery" and ask that the judgment be a lien upon certain premises. But beyond that it is obvious that plaintiff's case falls far short of presenting a situation which could invoke equitable principles. There is nothing to establish that the association members are so scattered about as to make service upon them practically impossible, as in Fitzpatrick. Nor is there any basis for finding that plaintiff is absolutely without a remedy as was the case in Bayci. Furthermore, there is no evidence that it was impossible to acquire the names and addresses of the members nor is there any proof that the individuals served represented the entire association. To hold in this case that substituted service under a doctrine of virtual representation would be permissible would be judicial legislation of the worst sort and open a Pandora's box of problems.

We find no error in the court's order. It is affirmed.

Affirmed.

SCHEINEMAN, PJ and CULBERTSON, J, concur.