JACK MULLIGAN, d/b/a Courtesy Service Station, Plaintiff-Appellee, *v.* TEAMSTERS UNION, LOCAL NO. 971, Defendant-Appellant.

Fifth District   No. 77-319

Opinion filed April 11, 1978.

JONES, J., specially concurring.

Joseph B. McDonnell, of Dixon, Starnes, Nester & McDonnell, of Belleville, for appellant.

Gomric & Strellis, of Belleville (Jack A. Strellis, of counsel), for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant, Teamsters Union, Local 971, appeals from a judgment of the circuit court of St. Clair County entered on a jury verdict in the amount of $21,000. In addition, Francis T. Hicks, identified as secretary-treasurer of Local 971, and Kenyon W. Friedline, were named as co-defendants in the original complaint. The court directed a verdict in favor of Friedline at the close of all the evidence and the jury found in favor of defendant Hicks. The complaint which was filed against defendant in its association name, alleged that defendant union had breached its contract with plaintiff Jack Mulligan d/b/a Courtesy Service Station for which plaintiff sought compensation in the amount of $250,000. Thus, the action was clearly one at law for money damages.

Prior to trial defendant union moved to dismiss plaintiff's complaint on the basis that, *inter alia,* the defendant was an unincorporated voluntary labor association and as such did not have the legal capacity to be sued in Illinois. On November 21, 1975, the trial court denied defendant's motion relying upon the reasoning of the appellate court in *American Federation of Technical Engineers, Local 144, v. La Jeunesse,* 25 Ill. App. 3d 765, 324 N.E.2d 23. Defendant renewed its argument in the form of a motion for a directed verdict, in its post-trial motion and again on appeal. Since our

determination of this issue is dispositive of the appeal, we need not consider the other points raised by the defendant.

The trial court specifically based its November 21, 1975, order on the holding in *American Federation of Technical Engineers, Local 144 v. La Jeunesse*, 25 Ill. App. 3d 765, 324 N.E.2d 23, where the First District allowed an unincorporated association to sue certain of its members for an alleged breach of contract. Relying upon the merger of law and equity, the court stated that

> "* * * no justification exists for allowing an unincorporated association to sue or be sued in equity through its representatives [citation], but not allowing it to sue or be sued in such a manner at law." (25 Ill. App. 3d 765, 768.)

(But *cf. Burkhart v. Illinois Power Co.*, 9 Ill. App. 3d 139, 291 N.E.2d 673.) Less than three weeks after the trial in the instant case the supreme court reversed the appellate court's opinion in *La Jeunesse*. In *American Federation of Technical Engineers, Local 144 v. La Jeunesse*, 63 Ill. 2d 263, 347 N.E.2d 712, the Illinois Supreme Court reaffirmed the common law principle that an unincorporated association has no legal existence independent of the members who compose it. Expressly rejecting any carryover from equity to law of representative suits, the court declared:

> "While unincorporated associations have thus been permitted to bring representative suits in equity, representative suits at law have not been allowed. (*Cox v. Shupe*, 41 Ill. App. 2d 413, 420-21; Tornquist, *Road Map to Illinois Class Actions*, 5 Loyola U.L. J. 45-61 (1974).) In 1 Nichols Illinois Civil Practice, section 281 (1961), it is said: 'There is no authority for an action at law against a defendant in a representative capacity or for an action at law by a plaintiff in a representative capacity.' " (63 Ill. 2d 263, 267.)

This is the law in Illinois.

The precept that the right to sue and be sued is a corporate franchise, originally granted by the King and today granted by the State, is well-rooted in our common law system. What changes have occurred have usually come through legislative action. We need not repeat the extensive list of authorities in support of the continuation of the common law rule cited in *La Jeunesse*, 63 Ill. 2d 263, 347 N.E.2d 712. We add that the potential for near destruction of unions is evident should this rule be abrogated. Thus, a court should not abrogate this rule without legislative action. We abide by the decision of the supreme court in *La Jeunesse* and accordingly find that plaintiff had no standing to sue Local 971, a voluntary unincorporated association, in its own name.

We find plaintiff's theory of estoppel by contract unpersuasive. To accept such a proposition would amount to judicially carving a new

exception to the rule for all contract actions. This we are not prepared to do.

For the foregoing reasons we reverse the decision of the circuit court of St. Clair County.

Reversed.

WINELAND, J., concurs.

Mr. JUSTICE JONES, specially concurring:

I agree that the result reached by the majority is compelled by the *La Jeunesse* case. Nevertheless, I also agree with the dissenting justices in the *La Jeunesse* case that:

> "The facts of life are that unincorporated voluntary associations, as entities, own and control assets worth millions of dollars and wield great power, both economic and political. Their ability to sue and be sued should not depend upon the continued existence of an archaic rule based on a legal fiction." 63 Ill. 2d 263, 269.

It should be recognized that the Judicial Article embodied in the Illinois Constitution of 1970 has abolished the distinction between courts of law and equity so that our state's circuit courts have "original and exclusive jurisdiction of all justiciable matters." (Ill. Const. 1970, art. 6, §9.) The purpose of section 9 was to create a single integrated trial court structure (Ill. Ann. Stat., 1970 Const., art. VI, §9, Constitutional Commentary (Smith-Hurd 1971)), thereby vesting the circuit courts with jurisdiction to adjudicate all controversies. Consequently, so long as a case presents a justiciable matter, the circuit court has jurisdiction and whether the action brought is by its nature historically "legal" or "equitable" is an irrelevant consideration. (*Lopin v. Cullerton*, 46 Ill. App. 3d 378, 361 N.E.2d 6; *Stevens v. Protectoseal Co.*, 27 Ill. App. 3d. 724, 327 N.E.2d 427.) In furtherance of this argument it should be noted that the Illinois legislature by a series of bills adopted in their 1976 session, abolished all statutory reference to the equitable "decree," substituting therefor the terms "order" or "judgment." Moreover, the statutory provisions encompassed in chapter 22 of the statutes, "chancery," were transferred to chapter 110 concerning "practice."

A legal and logical anomaly results when an unincorporated association, such as a union, wielding vast economic power and wealth, and engaging in a multitude of activities reaching into the core of our society, can neither sue nor be sued "at law."

In this regard the majority state: "We add that the potential for near destruction of unions is evident should this rule of suit immunity be

abrogated." With this remark I disagree. It implies that unions can function in society only if they are immune from suit, that if they are held accountable in the law of contract and tort the same as individuals and other business entities they could not survive. The statement is an unwarranted and unrealistic comment upon union purposes and operational methods. I believe they both could and would continue to fully perform their roles in society while being amenable to suits "at law."