FIELDS CADILLAC, INC., Plaintiff-Appellant, *v.* NEW CAR DEALERS COMMITTEE, Defendant and Counterplaintiff-Appellee.—(FIELDS CADILLAC, INC., *et al.*, Counterdefendants-Appellants.)

First District (4th Division)   No. 79-1053

Opinion filed September 18, 1980.

Mitchell, Russell & Kelly, and Richard T. Sikes, both of Chicago (Thomas J. Russell and William H. Kelly, Jr., of counsel), for appellants.

Winston & Strawn, of Chicago (George B. Christensen, C. R. Gangemi, Jr., and Danae Prousis, of counsel), for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

Counterdefendants-appellants (hereafter Dealers) bring this appeal from an order of the trial court granting the motion of defendant-appellee New Car Dealers Committee (hereafter NCDC) for judgment on the pleadings, confirming an arbitrator's award. Dealers contend that (1) NCDC, as a voluntary unincorporated association, is incapable of bringing suit in its own name; (2) the arbitration agreement violates due process and is contrary to public policy; (3) the arbitrator exceeded his powers in granting the award; (4) the arbitrator misconstrued the underlying agreement entered into by the parties; (5) that agreement is

void and unenforceable for lack of consideration and mutuality of obligation.

We reverse and remand.

The facts as alleged in the pleadings are as follows. NCDC is a voluntary unincorporated association of approximately 400 new car dealers (including Dealers) in the greater Chicago area. In 1974 and 1975 NCDC prepared and circulated among its members an instrument (hereafter Agreement) which is the basis of this litigation. The purpose of the Agreement was to authorize NCDC to negotiate a collective bargaining agreement with Automobile Mechanics Local 701 (hereafter Union), which represented mechanics employed at many of the members' dealerships. The Agreement, which each of the Dealers signed, provides in pertinent part:

"The undersigned automobile dealers being the members of the NEW CAR DEALERS COMMITTEE, a voluntary association, in consideration of the mutual covenants, promises and undertakings hereinafter described and for their joint and several protection against a unified collective bargaining opponent, agree as follows:

1. The undersigned severally authorize and designate the NEW CAR DEALERS COMMITTEE as their sole and exclusive bargaining representative and agent for the purpose of negotiating collective bargaining agreements with Automobile Mechanics Union Local 701 (hereinafter 'Union') for our separate bargaining units.

2. Pursuant to the above and in order to assist the collective bargaining negotiations, the undersigned jointly and severally agree that in the event any member or members of the NEW CAR DEALERS COMMITTEE are struck or picketed by the Union, the other members signatory hereto agree to lockout all employees in the bargaining unit represented by the Union until settlement of the dispute is reached.

3. Each dealer signatory hereto agrees that he will not individually negotiate, bargain or enter into any labor agreement or understanding with the Union as long as this agreement remains in force and effect.

\* \* \*

Each dealer signatory hereto hereby assigns to NEW CAR DEALERS COMMITTEE as agent for all complying signatories hereto all rights and claims for damages sustained by him by reason of or resulting from any violation or refusal of any signatory hereto to perform, obey or carry out any of the above promises, agreements and undertakings, and expressly authorizes said NEW CAR DEALERS COMMITTEE in its name to recover and collect

damages on behalf of the undersigned dealer and all other undersigned dealers and to pay and distribute such damages to such dealers in proportion to the losses sustained by them after first deducting all costs and expenses through arbitration as hereinafter specified.

Each dealer signatory hereto hereby agrees to submit to arbitration all disputes, controversies and claims for damages arising out of violations or alleged violation by any dealer of any of the provisons of this agreement. Such arbitration shall be submitted to and decided by an impartial arbitrator who shall be selected by the President of the EMPLOYERS ASSOCIATION OF GREATER CHICAGO.

Said arbitrator shall have the authority and power to determine the amount of damage to the NEW CAR DEALERS COMMITTEE and to each complying dealer arising out of or resulting from any violation or failure to perform any of the above promises or undertakings by any dealer and to render a decision and award in the amount of such damage in favor of said NEW CAR DEALERS COMMITTEE (for the purposes above stated) and against said dealer.

* * *

The award of the arbitrator shall be final and binding upon all parties and may be enforced by suit brought in any court of competent jurisdiction by the NEW CAR DEALERS COMMIT-TEE suing in its own name.

* * *"

The prior contract with the Union expired June 30, 1975. For over one month before that expiration NCDC engaged in unsuccessful negotiations with the Union for a new contract. On July 1, 1975, NCDC instructed all of its members employing Union mechanics to implement terms of employment and pay rates contained in NCDC's last offer to the Union. The implementation of these changes on July 2, 1975, resulted in a walk out by Union employees. However Dealers Hartigan, Fields and Johnson did not comply with the directive and their Union employees continued working. On July 2 these noncomplying Dealers were instructed by NCDC to either implement the changes or to lock out their Union mechanics. Dealer Fields complied with this second notice, but Hartigan and Johnson did not. In the latter part of July the other Dealers ceased implementation and permitted their Union mechanics to work in accordance with the terms of the expired contract. This condition continued until the Union struck all NCDC members on September 1, 1975.

On July 15, 1975, NCDC began arbitration proceedings against Dealers pursuant to the Agreement. The arbitrator was appointed by the president of the Employers Association of Greater Chicago who was also chief negotiator and executive secretary of NCDC.

On August 1, 1975, Dealer Fields filed a complaint for declaratory relief in the circuit court of Cook County seeking a declaration that the implementation instructions issued by NCDC on July 1, 1975, were beyond the scope of authority granted by the Agreement. On motion of NCDC those proceedings were stayed pending arbitration.

On January 9, 1978, the arbitrator issued his opinion and award, holding that the Agreement did authorize NCDC to order implementation of its final contract proposal. Dealers were found to have breached the Agreement by (1) refusing to implement NCDC's final contract proposal; (2) entering into individual understandings with the Union; (3) refusing to lock out the Union employees in response to the Union strike against other members of NCDC. The arbitrator awarded NCDC an aggregate sum representing the amount of gross money wages paid by Dealers to their Union employees during the period Dealers had not locked out their Union employees. Dealers were also directed to pay one-half of the arbitrator's fees.

On January 10, 1978, NCDC filed its answer to Field's complaint as well as a counterclaim seeking confirmation of the arbitrator's award and judgment. The other Dealers were named as additional counter-defendants. Dealers filed a motion to dismiss the counterclaim and vacate the arbitrator's award on the ground, *inter alia*, that NCDC, as a voluntary unincorporated association, lacked capacity to bring the counterclaim in its own name. Dealers had previously raised the issue of capacity, unsuccessfully, before the arbitrator. In response, NCDC moved for judgment on the pleadings, and the motion was granted.

(1)

On appeal Dealers contend that the trial court erred in denying their motion to dismiss NCDC's counterclaim on the ground of its lack of capacity to bring the counterclaim in its own name. The law in Illinois on this subject was most recently enunciated by our supreme court in *American Federation of Technical Engineers, Local 144 v. La Jeunesse* (1976), 63 Ill. 2d 263, 347 N.E.2d 712. There the plaintiff union, a voluntary unincorporated association, brought an action at law to recover fines which it had assessed against a number of its members. On the defendant members' motion the trial court dismissed the complaint, finding that plaintiff lacked capacity to bring an action in law either in its own name or in a representative suit. The appellate court reversed (25 Ill. App. 3d 765, 324 N.E.2d 23), holding that in view of the merger of law

and equity (Ill. Rev. Stat. 1973, ch. 110, par. 31), and the constitutional provision conferring on the circuit court jurisdiction in all justiciable matters (Ill. Const. 1970, art. VI, §9), unincorporated associations now could bring representative suits in law to recover damages. On appeal the Illinois Supreme Court unequivocally rejected this reasoning:

"It has been generally held that an unincorporated association has no separate legal existence independent of the members who compose it. (*Chicago Grain Trimmer's Association v. Murphy*, 389 Ill. 102, 107; *Butler Manufacturing Co. v. Department of Finance*, 383 Ill. 220, 228.) Thus, the common law rule was that a voluntary unincorporated association could not sue or be sued in its own name. If an action was to be brought by or against the association it was necessary that all members be joined as parties. (*Guilfoil v. Arthur*, 158 Ill. 600, 604; M. Forkosch, A Treatise on Labor Law 231-32 (2d ed. 1965).) This has been the generally accepted rule in Illinois. See *Burkhart v. Illinois Power Co.*, 9 Ill. App. 3d 139; *Boozer v. Local 457, UAW*, 4 Ill. App. 3d 611; *Murley v. Painter's Local 147*, 133 Ill. App. 2d 578; *Collins v. Barry*, 11 Ill. App. 2d 119; *Montgomery Ward and Co. v. Franklin Union, Local No. 4*, 323 Ill. App. 590; *Cahill v. Plumber's Local 93*, 238 Ill. App. 123; *Merchant's Underwriters v. Parkhurst-Davis Mercantile Co.*, 131 Ill. App. 617.

In a number of jurisdictions the rule has been changed, usually through legislation. (See Forkosch, *The Legal Status and Suability of Labor Organizations*, 28 Temple L.Q. 1 (1954).) At this time in Illinois there is a statute which permits certain unincorporated associations to sue and be sued in their own name in actions concerning their real estate. (Ill. Rev. Stat. 1973, ch. 30, par. 185.) If there are to be additional changes in the rule it should come through legislative action.

An exception to the general rule was developed in equity which allowed a representative suit to be brought in the names of a portion of the members of the association who were suing for themselves and also in behalf of all other members of the association. (*Guilfoil v. Arthur*, 158 Ill. 600, 606; *Carpenters' Union v. Citizens' Committee to Enforce the Landis Award*, 333 Ill. 225, 254; S. Puterbaugh, 1 Illinois Chancery Pleading and Practice 96-97 (7th ed. 1930).) In *Carpenters' Union* this court stated:

'Had the union been incorporated the bill might have been filed by the corporation in its own name in behalf of all its members, but being a voluntary, unincorporated association the bill might be maintained by the members of the association in their names, or where, as in this case, the

members are numerous and it is impracticable to bring them all before the court, the suit may be brought in the name of some of the members suing in behalf of all of the members, or it may be brought by the officers of the association or a committee appointed or authorized to prosecute it.' 333 Ill. 225, 254.

While unincorporated associations have thus been permitted to bring representative suits in equity, representative suits at law have not been allowed. (*Cox v. Shupe*, 41 Ill. App. 2d 413, 420-21; Tornquist, *Roadmap to Illinois Class Actions*, 5 Loyola U.L.J. 45, 61 (1974).) In 1 Nichols Illinois Civil Practice, section 281 (1961), it is said: 'There is no authority for an action at law against a defendant in a representative capacity or for an action at law by a plaintiff in a representative capacity.' " 63 Ill. 2d 263, 265-67, 347 N.E.2d 712, 714-15.

■■ NCDC contends that this issue was waived when the initial action for declaratory relief was brought by Fields against them. It must first be noted that even were such a waiver found it would only be applicable to Fields; the other Dealers did not join in that action but rather were brought into the case as counterdefendants by NCDC. But even as to Fields we do not construe the bringing of the declaratory relief action as a voluntary and intelligent relinquishment of the right to raise the issue of the capacity of NCDC to bring an action in its own name. Fields and the other Dealers all raised this issue initially before the arbitrator after NCDC commenced arbitration proceedings against them. Later in the trial court when NCDC first sought to prosecute its counterclaim the issue was again raised in Dealers' motion to dismiss. Under these circumstances we find no waiver of the issue.

NCDC's second contention concerning this issue is that, contrary to the statement of the court in *La Jeunesse*, unincorporated associations are permitted under an exception to the rule to bring actions at law when a representative of the association is expressly authorized to act as agent for the association. In support of this proposition three cases antedating *La Jeunesse* are cited: *Gratz v. Cozart* (1957), 13 Ill. App. 2d 515, 142 N.E.2d 833; *In re Estate of Muth* (1935), 283 Ill. App. 19, and *Warfield-Pratt-Howell Co. v. Williamson* (1908), 233 Ill. 487, 84 N.E. 706. We do not find these cases to be controlling.

In *Gratz* the plaintiff sued as "Receiver and Supervisor" of a union local to recover union dues owed by the defendant. In affirming judgment for plaintiff the appellate court held that because plaintiff had been appointed receiver and supervisor as provided by the union constitution he had a contractual right to control and possession of the union assets. One such asset was held to be the right to recovery of debts owed the

union, a right which the court held lay *solely* in the plaintiff. Thus *Gratz* did not actually involve a representative action, but instead a personal action based on the plaintiff's unique right to recover union assets.

*Muth* involved a claim on a loan brought against an estate by a loan committee empowered to act as agent for the members of an unincorporated association of subscribing banks. The association's bylaws created the agency in the committee. The articles of agreement of the association indicated that the purpose of the association was to loan money. In affirming judgment for the plaintiff the appellate court held that implicit in the power to loan money was the power to enforce payment of the loans in court. But in so holding the court relied on *Guilfoil v. Arthur* (1895), 158 Ill. 600, 41 N.E. 1009, a case involving the exception allowing suits in equity to be brought by a committee appointed by the organization when there were numerous members of the association. In light of the nature of this authority and the more recent pronouncements of our supreme court in *La Jeunesse* we do not find this case to be persuasive authority for the general exception asserted by NCDC.

Finally, *Warfield* involved a suit brought in *equity* against the manager and other members of a Merchant Underwriters' committee. The Merchant Underwriters was an unincorporated association organized to issue policies to its members. An association agreement, signed by all the members, gave the manager explicit authority to institute actions in connection with policies issued and to represent subscribers in proceedings against them in connection with any policy. On an appeal of a judgment for the plaintiff the defendants contended that the plaintiff should have brought separate actions against each of the over 500 subscribers for the pro-rata share for which each was liable. In alternative holdings our supreme court affirmed the judgment. It held that because by the terms of the agreement the manager was authorized to represent all the subscribers in litigation, a suit against him in his representative capacity was in effect a suit against the subscribers. Thus a judgment against him in an action at law or a decree in an equitable action would be binding on the association. Clearly to the extent this statement concerned actions at law it was dictum, for although the court stated that the cause could have been brought in an action at law it held the equitable jurisdiction of the court had been properly invoked. In addition the court noted that as an alternative basis for affirming the decision, even without the existence of an agreement relating to representative actions, a suit in equity against some members of the association, acting for all, would be permitted where the parties were numerous and bringing them all before the court would be impracticable. This same exception was noted by the court in *La Jeunesse.*

Given the clear statement of the court in *La Jeunesse,* that

absent specific statutory authorization a voluntary unincorporated association cannot bring in its own name an action at law, we are not persuaded that the earlier cases cited by NCDC created the broad exception urged by them. Such an exception would inevitably and in short order swallow up the rule since associations would need only to adopt the simple expedient of drafting agreements similar to those involved in this action. If such a change is to be adopted in Illinois, as our supreme court held in *La Jeunesse*, it must be done by the legislature. In this regard we note that in Chief Justice Goldenhersh's annual report to the General Assembly the court urged that body to abolish the rule. Illinois State Bar Association, Judicial Administration, vol. 10, special edition, March 1980.

NCDC also contends that its counterclaim should be permitted under the authority of *Illinois Telephone Association v. Illinois Commerce Com.* (1977), 67 Ill. 2d 15, 364 N.E.2d 63. In that case the association appealed certain I.C.C. orders to the circuit court, which reversed the orders. The appellate court, relying on *La Jeunesse*, reversed. (38 Ill. App. 3d 740, 348 N.E.2d 490.) Our supreme court held that *La Jeunesse* was distinguishable because the statute establishing the method of review for I.C.C. orders (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 72), specifically granted to corporations, defined to include associations, the right to appeal I.C.C. decisions to the circuit court. Contrary to the assertion of NCDC, the distinction drawn in *Illinois Telephone Association* was not between common law actions at law and statutory ones but rather between actions which statutes specifically gave associations the right to bring and those for which there was no such statutory authority. No such specific authority is granted to associations in the Arbitration Act. Ill. Rev. Stat. 1975, ch. 10, par. 101 *et seq.*

■■ Because we find that the judgment of the trial court must be reversed for lack of capacity by NCDC to bring its counterclaim, we do not reach the other contentions urged by Dealers.

The judgment of the trial court is reversed and the cause remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

JOHNSON and JIGANTI, JJ., concur.