THE CITY OF PARK CITY, Plaintiff-Appellee, *v.* HY BROSTEN, d/b/a HY-WAY SALES, Defendant-Contemnor-Appellant.

(No. 73-352;

Second District—December 12, 1974.

*Rehearing denied January 8, 1975.*

Bellows & Bellows, of Chicago, and William A. Holmquist, of Snyder, Clarke, Dalziel, Holmquist, & Johnson, of Waukegan, for appellant.

Conzelman, Schultz, O'Meara & Snarski, of Waukegan (Eugene Snarski, of counsel), for appellee.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Defendant was held in contempt of court and sentenced to a term of 3 months "or such lesser period when said defendant  *  *  *  might purge himself by complying with the Writ (mandatory injunction) heretofore issued." On appeal, defendant claims: (1) that he was found guilty of criminal contempt; (2) that he was denied due process; and (3) that the trial court was without jurisdiction to enter the injunction upon which the contempt order is founded.

On May 27, 1969, the plaintiff filed its complaint alleging that the defendant was violating its junkyard ordinance. During trial, on May 13, 1971, a decree was entered in which the court found it had jurisdiction both of the parties and the subject matter and that the parties had entered into an agreed order. The court entered a permanent injunction against the defendant ordering him to cease operating a junkyard and to "clean up the premises" before November 1, 1972. A few days later, the defendant petitioned the court to rescind its decree. The court denied the petition. This court stayed the injunction pending appeal and later affirmed the decree (6 Ill.App.3d 474, *appeal denied*, 52 Ill.2d 597). Upon remand, the trial court entered an order on January 30, 1973, directing the issuance of the writ of injunction pursuant to the May, 1971, order.

A review of the record reveals that on April 2, 1973, after a hearing on plaintiff's rule to show cause, defendant was found in contempt of court. He was sentenced to jail until he purged himself of said contempt, but the order was stayed to allow defendant time to submit to the court a plan by which he could comply with the injunction. On April 24, defendant submitted a plan which amounted to a continuation of his operation under a different arrangement. The proposed plan did not comply with the court's order for removal of junk. At this hearing there was entered an agreed order continuing the cause until May 30, at which time defendant was to submit a report showing a weekly removal of 100 tons of scrap and, additionally, show that no new scrap was being allowed into the yard. On May 30 it was determined that 120 tons, not 500 tons, of scrap had been removed. Defendant claimed that he was unable to remove the required amount because his property was under water; he invited the trial judge to inspect the premises. Court and counsel visited the premises on the following day. At the next hearing, June 12, the court reported on its visit, finding that while the south end of the property was under water, the north end, which contained several hundred dismantled cars, was not and that those cars could have been removed. Thereupon the court committed defendant to jail until he purged him-

self of contempt. The next day, defendant appeared before the court and stated that he had entered a contract with Diamond Scrap Yards for removal of the scrap. After hearing Diamond's representative testify that removal would take 120 days, the court vacated the commitment order and continued the case for 120 days. On August 2, defendant appeared and advised the court that, because of a disagreement, Diamond was no longer removing the scrap. At this hearing, Diamond's representative testified that defendant was hauling in new junk. The court then ordered weekly reports and continued the matter until September 4. At the next hearing, September 10, the court, unsatisfied with defendant's progress, ordered removal of all junk (as required under the injunction of May 13, 1971) by October 10, 1973, and further ordered that it would meet defendant and the attorneys at the premises on that morning. On October 10, after the judge and the attorneys visited the premises, the judge found that the north end of the property looked "just as loaded with automobiles" as it was 4 months previous. At this hearing, defendant called the attorney for the Lake County Forest Preserve who testified that a condemnation suit was filed against a portion of defendant's property located in the City of Waukegan and adjacent to the premises in question and that the District might work out an arrangement by which defendant could temporarily store the junk from the Park City property on the Waukegan parcel. He further testified, however, that defendant "has not ceased bringing in new junked cars to the yard, and until such time as he does that we don't see how he's ever going to get to the point where he can remove the ones he's got." It was at the conclusion of this hearing that the order appealed was entered.

Defendant contends that he was held in criminal contempt of court in violation of due process requirements accorded a criminal proceeding. Specifically, he maintains that he was denied the right to know the nature of the charge against him, the right to a hearing, the right to confront witnesses, the right to present evidence in his own behalf, and possibly the right to have his case heard by a jury.

■■■ Clearly, defendant was held in civil, not criminal contempt of court. The Illinois Supreme Court distinguished the two as follows:

> "Criminal contempt is conduct which is directed against the dignity and authority of the court or a judge acting judicially, while civil contempt ordinarily consists of failing to do something ordered to be done by a court in a civil action for the benefit of the opposing litigant therein." *People ex rel. Kazubowski v. Ray,* 48 Ill.2d 413, 416 (1971).

In *Board of Junior College District No. 508 v. Cook County College Teachers Union,* 126 Ill.App.2d 418, 427-28 (1970), the court stated:

"[A] useful test by which a civil contempt can be distinguished from a criminal one is the punishment imposed. When punishment is purely punitive: imprisonment for a definite term * * * the contempt is said to be criminal. When punishment is a remedial or coercive measure: commitment of a contumacious party until he complies with the mandate of the court * * * the contempt is said to be civil."

Here, the court found defendant in contempt, not to punish him, but to make him comply with the order of the court. The court's intent to coerce, rather than punish, the defendant is manifested by the many opportunities allowed defendant to comply with the order and also by the fact that on a prior occasion defendant was released from jail upon presenting before the court a contract for removal of junk from his property in compliance with the court's order. Throughout these proceedings the trial court displayed remarkable patience and extended considerable effort on behalf of defendant.

■■ The trial court imposed a term of 3 months or such lesser period of time as it may take the defendant to purge himself of contempt. Once again, defendant can avoid a jail term by merely complying with the order. The sentence imposed is, therefore, clearly coercive, not punitive.

Defendant claims that he was denied the right to know the nature of the charge against him, that he was not afforded a hearing, that he was not allowed to confront witnesses or to present evidence in his own behalf. This argument in its entirety appears to be based on the defendant's dissatisfaction with the trial court for not allowing him to re-litigate the issues underlying the order of May 13, 1971, which enjoined him from operating a junkyard on the subject premises. Those issues were decided against the defendant, affirmed by this court and are *res judicata*.

■■ The issue at bar is whether the defendant was in contempt of court for failing to comply with the order entered on May 13, 1971. That defendant did not know the nature of the charge against him is beyond comprehension: he was in court, told to clear his property and informed that the consequence for failing to comply with this order would be a jail term. Defendant presented proposals to the court as to how he intended to comply with the order. The charge was clear. Defendant had the option of complying or being held in contempt. He chose the latter. Similarly, there is no merit to defendant's contention that he was not afforded a hearing. He was given at least six hearings.

Defendant was allowed to confront witnesses and present evidence in his own behalf. In point of fact, however, several of his own witnesses testified that defendant was not complying with the court order in that he was continuing to bring additional scrap into the yard. Defendant ob-

jects, on appeal, to the trial judge's personal inspections of the junk-yard, but because such inspection was initially made at defendant's request, this issue, too, is without merit.

Defendant further argues that the court was without jurisdiction to enter the original injunction against him. This contention is nothing more than a circuitous and futile attempt to relitigate the original case. As we have indicated, that issue was resolved by this court on a prior appeal.

Shortly after entry of the order appealed, defendant obtained a stay order from this court, which order, in part, set forth the following conditions:

"IT IS HEREBY ORDERED:

\* \* \*

2. That pending the appeal of said Order, the Defendant be and he is hereby released on bail upon his own recognizance in the sum of $1,000.00.

3. That pending appeal the said Defendant is enjoined from moving wrecked or dismanteled [sic] automobiles, batteries, tires, rubber debris or parts of automobiles or vehicles onto the property owned by the Defendant in Park City, Illinois, the subject matter of his litigation.

4. That said Defendant continue removal of the wrecked, dismanteled [sic] automobiles and all other debris on said property on the same scale or better than he has done in the past three (3) months and furnish weekly reports of the tonnage removed to Attorney Eugene Snarski, 33 North County Street, Waukegan, Illinois, 60085, Attorney for Park City, Illinois. \* \* \*"

During the pendency of the appeal, plaintiff filed a petition containing allegations to the effect that, subsequent to the entry of the above order, defendant has received additional junk onto his property and has failed to furnish weekly reports of removal of scrap "since February 1973 [sic]." The petition requests this court or, in the alternative, the trial court to conduct a hearing to determine the appropriate relief and to vacate the stay order. In response, defendant filed a motion to dismiss the petition on the grounds that laches has attached and, additionally, that this court lacks jurisdiction to direct the trial court to hold hearings on the petition. We have considered defendant's motion to dismiss and find it to be without merit. Our stay of proceedings was granted "until further order of this Court." This opinion finds against the defendant on the issues, therefore, plaintiff's motion to vacate the stay order, entered October 17, 1973, is allowed.

■■ The remainder of plaintiff's petition presents a novel issue from a procedural aspect. The substantive law is clear. "All courts are vested

with an inherent power to punish for contempt as an essential incident to the maintenance of their authority and the proper administration and execution of their judicial powers." (*People v. Javaras,* 51 Ill.2d 296, 299 (1972). Also see this court's opinion in *Stevens v. County of Lake,* (24 Ill.App.3d 51 (1974).) Unclear is the method to be used to obtain evidence from which a determination of the issue may be made. This court, like most reviewing courts, is not physically equipped to receive and record evidence on the matters here presented. While this may create a certain frustration, it does not mean that we are necessarily estopped from invoking our power to punish for contempt. Contrary to defendant's claim, we are of the opinion that Supreme Court Rule 366(a)(5) (Ill. Rev. Stat. 1973, ch. 110A, § 366(a)(5),) empowers this court to remand plaintiff's petition to the trial court for an evidentiary hearing. See also *In re Koome,* 82 Wash.2d 816, 514 P.2d 520 (1973).

It is therefore ordered that:

1. The motion to dismiss plaintiff's petition is denied;
2. The motion to vacate defendant's stay order is allowed;
3. The order appealed is affirmed and that portion of the decision is final.
4. A rule is hereby entered upon the defendant, Hy Brosten, d/b/a, Hy-way Sales, to show cause, if any he has, why he should not be held in civil contempt of this court for failure to comply with its order of October 17, 1973. Said rule is returnable on December 27, 1974, at 9:30 A.M., before the Honorable Fred H. Geiger, or any other circuit judge of the Nineteenth Judicial Circuit, for the taking of evidence upon matters contained in plaintiff's petition (which is hereby transferred to said court) and responsive pleadings, if any.
5. Upon completion of such hearing, the pleadings and all evidence introduced shall be promptly transcribed and certified by the sitting judge and submitted to this court for further proceedings for which purpose this court retains jurisdiction.
6. A copy of this order shall be served upon the parties by certified mail and plaintiff's petition is continued pending execution of paragraphs 4 and 5 of this order.

GUILD and RECHENMACHER, JJ., concur.