THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EUGENE DROSKIEWCZ, Defendant-Appellant.

First District (5th Division)   No. 77-1657

Opinion filed September 1, 1978.

Ralph Ruebner and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Francis X. Speh, Jr., and Ira H. Raphaelson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Defendant was charged by complaint with the battery of Ben Spinato. (Ill. Rev. Stat. 1977, ch. 38, par. 12—3.) Following a bench trial, defendant was found guilty and sentenced to one year probation. On appeal, he contends that (1) the State failed to prove, beyond a reasonable doubt, that he was not acting in self-defense, (2) the trial court erred in refusing to consider the unexplained failure of the State to produce a material witness. We affirm.

### State's Case

Ben Spinato, the complainant, testified that he was employed as a truck driver for the city's Department of Streets and Sanitation. On April 11, 1977, at approximately 9:30 a.m., he and three laborers were working in the alley in the 2400 block of West Haddon. Spinato was in the process of backing the truck when he noticed a car parked in the alley. He stopped approximately 10 feet in front of the car and honked his horn twice. A man identified as defendant approached the driver's side of the truck where Spinato was seated, and told him to watch out for his car. Spinato replied that he had a job to do. Defendant became "abusive" and stated that he was a taxpayer, that he would move the car when he was ready to do so, and that he would call the police. Spinato started to roll up the

window and defendant who was standing on the running board spat at him and hit him in the eye. Spinato got out of the truck in order to defend himself and noticed an old woman standing in his way. Defendant hit him two or three more times. Spinato did not hit defendant, and returned to the truck. As Spinato placed his hand on the door of the truck he turned around and saw defendant holding a chair in his hand. Defendant hit him over the back with it and Spinato fell. He subsequently stood up, got into the truck, and drove to a store where he went inside and called the police.

Thomas Tortortinllo testified that on April 11, 1977 between 9 and 10 a.m. he was working as a laborer emptying garbage cans in the alley on West Haddon when he heard noises. He started walking towards the garbage truck which was about 50 feet or 10 to 15 buildings away, and he observed a man identified as defendant pick up a chair. The driver and defendant ran in front of the truck and Tortortinllo's view was obstructed. He also noticed a woman standing in a gangway about 3 feet away from the driver. The truck was running during these events.

During cross-examination, Tortortinllo stated that his attention was brought to the incident because another employee named Adolph approached him and the other laborers and told them that there was "something going on" between the driver and defendant.

William Bracy, another laborer working in the alley, testified that from 50 feet away, he observed the truck back into the alley and stop. He noticed that defendant and the driver were having trouble, although he could not hear or see anything over the loud noise of the truck. He further observed a woman in the alley close to a fence and to the north of the truck.

During cross-examination, Bracy stated that he heard the disturbance over the sound of the truck. He further approximated that within the 50-foot distance from where he was standing to the truck, there were three buildings.

Chicago Police Officer McCarthy testified that he was on duty on April 11, 1977. At approximately 10 a.m. he proceeded to the 2400 block on Haddon where he and his partner "broke a verbal argument" between defendant and Spinato. Spinato was bleeding and they took him to the hospital. Defendant was placed under arrest. During cross-examination McCarthy stated that defendant and his mother were also taken to the hospital.

### Defendant's Case

Defendant, testifying in his own behalf, stated that he lived with his mother at 2449 West Haddon. At 9:30 a.m. on April 11, 1977, he, his mother and Bacillio Alvarez, a neighbor, left their building and

proceeded to the garage. Alvarez went to find tools; defendant went to get the car; and his mother waited next to the garage, inside the gate near the alley.

Defendant pulled his car out of the garage and drove down the alley about 12 feet. He then exited from the car in order to close the overhang door of his garage. Before he reached the door, he noticed that the driver of a garbage truck was driving down the alley at a fast rate of speed and almost hit his car. The driver, identified as Spinato, began to call defendant and his mother "dirty names." After the onslaught of foul language, defendant told him to behave himself or he would call the police. Spinato continued to call them names and defendant repeated that he would report him and that he was "sick."

Spinato jumped out of the truck and swung, and defendant ran inside the gate. Spinato tried to force his way through and defendant's mother tried to close the gate. Spinato pushed her, picked up sticks and hit her with the sticks. He then hit defendant with a stick and punched him. Defendant tried to protect himself, and admitted that he might have punched Spinato.

Defendant proceeded through the gangway to the front of his house in order to look for the police but could not find them. When he returned to the alley, Spinato was attempting to back up the truck. Defendant told him that he was not going anywhere because defendant intended to report him to the police. Spinato jumped out of the truck and chased him down the street but did not catch him. Spinato went to the corner in order to make a phone call. When defendant returned to the alley, he put his car back into the garage and went upstairs and called the police. When the police arrived they took him and his mother to the hospital. He suffered a bump on his head from Spinato's fist and cuts on his hands and arms from the sticks.

During cross-examination, defendant testified that the garbage truck stopped within a foot of his car. Alvarez, his neighbor, remained in the garage part of the time, but the overhang door was open so he could look out. While defendant stated during cross that he was able to see Alvarez the whole time, he testified on redirect that because of the trouble with Spinato, he did not see Alvarez during the entire sequence of events.

Josephine Droskiewicz, defendant's mother, testified that she is 84 years old. On April 11, 1977, at approximately 9:30 a.m. she and her son left their home in order to go shopping. When she went to the yard and stood inside the gate, a man hit her with a stick and pushed her and hurt her son. She was afraid and called for help. When the police arrived, they took her to the hospital.

Bacillio Alvarez testified that he lives in the Droskiewicz's building. At 9 a.m. on April 11, 1977, he left his home and went to the garage with

defendant. Mrs. Droskiewicz stood outside the garage and inside the gate that surrounded the yard. Defendant proceeded to take his car out of the garage, while Alvarez stayed behind to look for tools. Through the open garage door, Alvarez observed the truck driver get out of the truck. The driver was "red in the face" and picked up a broken chair and hit it against an iron post. He took a piece of the chair and chased defendant. The latter ran through the gate, followed by the driver who pushed Mrs. Droskiewicz as he passed through the gate. The driver then struck defendant with a stick and subsequently got back into his truck and began pulling away. Defendant and Alvarez went to talk to the man and the man got out of his truck and began yelling at defendant. Defendant told him that he was going to call the police.

During cross-examination, the witness stated that he was a tenant of Mrs. Droskiewicz and had been acquainted with defendant for four or five years. Although the garbage truck motor made a loud noise, he nevertheless heard most of the conversation from the back of the garage where he was standing.

Paulina Hernandez, a neighbor of defendant's, testifying through a Spanish-English interpreter, stated that she was in the back of her house when she heard a loud noise. She looked through her window and saw one of the garbage men push Mrs. Droskiewicz and defendant. The man had a stick in his hand. During cross-examination, she stated that she lives on the first floor and admitted that she did not see everything that happened. Although there was some question raised as to whether a building obstructed her view, she insisted on redirect that she could see to the alley from her windows.

After his finding of guilty, the trial judge stated:

"Court finds the State's witnesses are credible on the issue involved and I think that the first physical blow was struck by the defendant.

The police officer further made the observation that the complaining witness was bleeding at the time he arrived on the scene. I believe the witness who testified he saw the chair in the defendant's hand."

The judge sentenced defendant to one year probation.

OPINION

■■ At the outset we note that we, as a reviewing court, may only disturb the trial judge's finding in a case hinging on the credibility of the witnesses when the evidence adduced below is so improbable or unsatisfactory as to raise a reasonable doubt of guilt. (*People v. Gates* (1977), 47 Ill. App. 3d 109, 361 N.E.2d 809; *People v. Rowe* (1977), 45 Ill. App. 3d 1040, 360 N.E.2d 436.) Where the evidence is merely conflicting we are reluctant to

substitute our judgment for that of the trier of fact, who is in the best position to assess the demeanor of the witnesses. *People v. Glenn* (1975), 33 Ill. App. 3d 417, 337 N.E.2d 435.

Although, in the present case, the State's and defense's recounting of events are in sharp conflict, the trial judge explicitly stated that he found the State's witnesses credible, and believed that defendant struck the first physical blow. We believe there is ample evidence in the record to support the trial judge's finding.

■■ Although defendant and Spinato were the only persons present during the entire course of events, Spinato's testimony is corroborated in important respects by the two laborers who testified. Tortortinllo stated that he saw defendant pick up a chair and Bracy testified to the effect that a woman was standing in close proximity to the scuffle. Although defendant's mother corroborated aspects of his story, we note that she, an elderly woman, was admittedly frightened and upset at that time. There is some dispute that Hernandez could see the incident from her vantage point. Alvarez supported defendant's story as to Spinato's hitting defendant and Mrs. Droskiewicz with sticks, but the trial judge instead chose to believe Spinato, who denied striking defendant. A reversal of a defendant's conviction is not required, even when his testimony is corroborated, where the State has presented sufficient evidence to convict. (*People v. Dixon* (1976), 39 Ill. App. 3d 132, 350 N.E.2d 193.) We agree with the trial judge in our holding that the State proved beyond a reasonable doubt that defendant was not acting in self-defense when he struck Spinato.

We briefly turn to the second issue raised by defendant concerning the trial judge's refusal to consider the failure of the State to call a material witness. During defense counsel's closing arguments, the following colloquy transpired:

"[DEFENSE COUNSEL]: * * *

The testimony at this point is that Mr. Droskiewicz got out of his car to close the garage door and then to move his car and take his mother shopping. The only person who contradicted that is Mr. Spinato who is the complainant in this case. It's not been corroborated by any of his witnesses, and the one positive witness who could have corroborated that is not in court today.

[ASSISTANT STATE'S ATTORNEY]: Objection to that.

THE COURT: Sustained."

■■ While it is true that a defendant may comment upon the unexplained absence of a witness (*People v. Scott* (1967), 38 Ill. 2d 302, 231 N.E.2d 441; *People v. Plum* (1976), 44 Ill. App. 3d 922, 358 N.E.2d 1235), there is no evidence in the record that the missing witness was either material or not equally accessible to defendant as well as the State. The mention of

this alleged material witness named "Adolph" during the testimony of Tortortinllo as the man who alerted his attention to the incident does not, without more proof, give rise to the inference that Adolph possessed superior knowledge of the events. We thus hold that the trial judge correctly sustained the State's objection to defense counsel's comments regarding the missing witness.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.