SUNSET TRAVEL, INC., et al., Plaintiffs-Appellees, v. ROBERTO LOVEC-CHIO, Defendant-Appellant.

First District (4th Division)   No. 81—1960

Opinion filed March 24, 1983.

JIGANTI, J., dissenting.

Edward R. Theobald, of Boharic and Theobald, and Dorothea Kaplan, both of Chicago, for appellant.

Pitler & Mandell, of Chicago (Barry L. Powell, Philip L. Mandell, and Barry A. Pitler, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Defendant, Roberto Lovecchio, was found in contempt of court. He was sentenced to 30 days in jail, but could purge himself and obtain his immediate release by delivering over to Sunset Travel, Inc., one of the plaintiffs, certain airline tickets claimed by Sunset to be its property.

On appeal Lovecchio essentially contends: (1) that he was erroneously found guilty of "direct civil contempt" where, at most, he could be found guilty of "indirect criminal contempt"; (2) that he was erroneously denied his due process rights; and (3) that the 30-day jail sentence sanction was imposed improperly.

We conclude that Lovecchio was guilty of indirect civil contempt; that he was accorded his due process rights; and that the sanction was properly imposed.

BACKGROUND

On June 9, 1981, incident to the service of certain outstanding traffic violation warrants and incident to a theft investigation, Lovecchio was arrested and his automobile was searched. The police found and inventoried certain business records, including 76 airline tickets, one of which was validated. The airline ticket numbers were recorded by the police. Several hours after the arrest, Lovecchio was released. The business records and the airline tickets were returned to him.

On June 9, 1981, plaintiffs, Sunset Travel, Inc., and Underwater Adventure Tours, Ltd., filed a complaint in the circuit court of Cook County seeking injunctive and other relief against Lovecchio and Sandra Shearer. Plaintiffs charged that Lovecchio and Shearer, with whom they had been associated in a travel agency business, wrongfully and without authority removed certain business records, including airline tickets. Plaintiffs sought return of the business records and the airline tickets. Subsequently, Lovecchio and Shearer were served with a notice to produce the records and airline tickets in court.

Pursuant to the motion to produce, the parties appeared in person with counsel before the trial judge on June 19, 1981. At that time an agreed order was entered enjoining Lovecchio and Shearer in certain respects. Further, Lovecchio and Shearer were directed to prepare and submit an inventory of all business records and documents held by them that were listed in the notice to produce previously served upon them. Further hearing was continued to June 24, 1981.

On June 24, Lovecchio and Shearer appeared with counsel and presented their inventory. The inventory failed to include the documentation of the airline tickets in issue. Thereupon, certain testimony relating to the airline tickets was presented. The police officers who previously had arrested Lovecchio testified to their search and inventory of the business records and airline tickets taken from Lovecchio's automobile. They asserted that all the records including the airline tickets had been returned to Lovecchio upon his release from custody. Lovecchio testified that he last saw the airline tickets in a room in the police station where they had been taken after being removed from his automobile by the police. He had no knowledge as to the tickets after that. He did not know where they currently were. He recalled that the police had questioned him about the tickets. He claimed that the police had returned all the documentary materials that had been taken from his automobile, but he had no recollection of the return to him of the airline tickets.

Following the testimony, an in-chambers conference took place. On returning to the courtroom, the trial judge asserted that he did

not believe Lovecchio's testimony as it related to the airline tickets. The trial judge stated,

"I do not believe Mr. Lovecchio in the slightest degree at this moment in time, predicated on the evidence that I have heard. It is inconceivable to me that the two police officers would lie, that Mr. Milito would lie, and that his supervisor, Mr. Orsi would lie."

While observing that no contempt finding was being made at that time in connection with Lovecchio's failure to produce the airline tickets, the trial judge suggested that counsel for plaintiffs submit a petition to find Lovecchio in contempt. The trial judge directed that the proceeding be continued and stated, "You may draft an order insofar as Monday morning is concerned, and I will give Mr. Lovecchio an opportunity to explain to this court once again." The foregoing comments and action by the trial court took place without objection.

Thereafter, on July 10, 1981, plaintiffs filed their petition seeking contempt findings and the imposition of sanctions against Lovecchio and Shearer for their failure to produce the airline tickets. On July 24, 1981, Lovecchio and Shearer by counsel filed their response and supporting memorandum to plaintiffs' petition. Lovecchio and Shearer acknowledged the accuracy of the transcript of the June 24, 1981, hearing, and in effect again claimed that they did not have possession or control of the airline tickets and consequently could not produce them. In addition to "impossibility of performance," Lovecchio and Shearer contended that the airline tickets, being unvalidated (except for one), were of little or no value and their production would be of no economic benefit to plaintiffs.

Hearings on all pending matters resumed on August 3, 1981. Arguments of counsel were presented. At the conclusion of the proceeding the trial judge entered an order finding, among other things, that the evidence presented at various hearings established that Lovecchio, while able to comply with the trial court's order to produce, had failed to produce certain airline tickets and consequently was in "direct contempt" of court.[1] The trial judge found Lovecchio's failure to abide by the trial court's order to be wilful and contumacious; he found further that Lovecchio had not shown any "just reason" for failure to comply with the production order that the airline tickets be delivered to Sunset Travel, Inc. Lovecchio was sentenced to 30 days' confinement,

---

[1]The order of August 3, 1981, sets forth the trial court's adjudication that Lovecchio was guilty of "direct contempt" of court. However, no reference is made in the order to the effect that the contempt was civil or criminal in nature.

with the right to immediate release upon purging himself of contempt by producing the airline tickets.[2]

Following denial of a motion to reconsider and vacate the August 3, 1981, order of contempt and sanction, this appeal was taken.[3]

## I

Lovecchio first contends that the trial court erroneously found him guilty of "direct civil contempt" where, at most, he could be found guilty of "indirect criminal contempt."[4] Thus, Lovecchio claims, the contempt finding and sanction must be set aside. We agree with Lovecchio that the trial court would be in error in finding him guilty of "direct civil contempt"; we disagree with Lovecchio that, at most, he could be found guilty of "indirect criminal contempt." We conclude that Lovecchio was guilty of indirect civil contempt and that the sanction imposed was proper despite what Lovecchio contends was the trial court's characterization of the contempt as "direct civil contempt."

Contempt of court has generally been defined as verbal or nonverbal conduct calculated to embarrass, hinder, or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of justice into disrepute. Further, contempt of court may result from failure to abide by the terms of a court order or judgment. (*People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 364 N.E.2d 50, *cert. denied* (1978), 434 U.S. 1023, 54 L. Ed. 2d 771, 98 S. Ct. 750; *County of Cook v. Lloyd A. Fry Roofing Co.* (1974), 59 Ill. 2d 131, 319 N.E.2d 472; *People v. Jashunsky* (1972), 51 Ill. 2d 220, 282 N.E.2d 1, *cert. denied* (1972), 409 U.S. 989, 34 L. Ed. 2d 256, 93 S. Ct. 332; *In re Estate of Melody* (1969), 42 Ill. 2d 451, 248 N.E.2d 104.) Such allegedly contumacious conduct may, depending on the surrounding circumstances, be tried as direct or indirect contempt.

Contumacious conduct constitutes direct contempt if it is committed in the physical presence of the judge or within an integral part of the court, while the court is performing its judicial functions. The trial judge personally must be aware of the contemptuous conduct; no evi-

---

[2]It appears that Shearer was excluded from responsibility for failure to abide by the order of the trial judge. The contempt findings and sanction were directed to Lovecchio alone.

[3]A stay of sentence pending appeal was not immediately perfected. In consequence, Lovecchio was confined for three days, after which he was released on bond pending the disposition of this appeal.

[4]See footnote 1 above.

dentiary hearing would be required to determine the facts establishing the conduct found to be of a contemptuous character. (*People v. Javaras* (1972), 51 Ill. 2d 296, 281 N.E.2d 670; but see *In re Estate of Melody* (1969), 42 Ill. 2d 451, 248 N.E.2d 104.) Since the contumacious conduct is committed in the presence of the court, the contemnor may be adjudged and sanctioned in a summary manner. *City of Chicago v. Chicago Fire Fighters Union* (1981), 99 Ill. App. 3d 583, 425 N.E.2d 1071.

In a direct contempt setting there need not be any specific showing of intent to be contumacious. The requisite intent becomes evident from the contumacious conduct itself. Thus, only a general intent need be established, and that general intent may be discerned in the contemptuous conduct. Whether a direct contempt has been committed depends upon the act and not the alleged intention of the offending party. A contemptuous state of mind may be inferred from a contemptuous act. Thus, the intent may be inferred from the proof of the surrounding circumstances and from the character of the action of the contemnor. *People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 364 N.E.2d 50; *People v. Haas* (1981), 100 Ill. App. 3d 1143, 427 N.E.2d 853; *People v. Rodriguez* (1980), 91 Ill. App. 3d 626, 414 N.E.2d 1202.

■ Contumacious conduct constitutes indirect contempt if it is committed out of the presence of the judge and is therefore dependent for its proof upon extrinsic evidence of some kind or upon the establishment of facts of which the court has no personal knowledge. (*People v. Harrison* (1949), 403 Ill. 320, 86 N.E.2d 208.) Thus, where the contumacious act is not an apparent one and its demonstration depends on proof of facts of which the court has no judicial notice, the contumacious conduct properly is characterized as indirect contempt. Under such circumstances the law requires that the alleged contemnor be granted all due process rights so that he is given a reasonable opportunity to defend against the charge. *People v. Skar* (1964), 30 Ill. 2d 491, 198 N.E.2d 101; *People v. Gholson* (1952), 412 Ill. 294, 106 N.E.2d 333.

The record here clearly discloses that the trial judge required and the parties presented evidence on the issue concerning the production of the airline tickets. Lovecchio strongly urged that he had no present knowledge of the tickets or their whereabouts. The proceeding was presented in an adversary manner; witnesses testified, as Lovecchio himself ultimately did.

■ The determination by the trial judge that there had been a refusal to abide by the court's production order of June 24, 1981, was dependent on the trial judge's evaluating and considering the truth or

falsity of the evidence presented. It is apparent that the conclusion reached by the trial court on the issue of contempt was based on the extrinsic evidence presented, not on the trial court's personal knowledge of the events that had transpired. Additionally, the record affirmatively shows the submission to the trial court of a petition seeking contempt sanctions against Lovecchio, the filing of a response and supporting memorandum by Lovecchio, and the detailed testimony and cross-examination of various witnesses, including Lovecchio.

■ Considering the foregoing, we necessarily agree with Lovecchio that the proceeding involved here was in the nature of an indirect contempt of court. (*People v. Siegel* (1981), 102 Ill. App. 3d 529, 430 N.E.2d 142.) However, the fact that the trial court mischaracterized as "direct" rather than "indirect" does not mean that the finding of contempt must be abrogated and the sanction revoked. The fact that a trial judge erroneously describes the nature of the conduct in issue is not a satisfactory legal basis for negating the proof of the alleged misconduct and vacating the sanction imposed. See *Keck v. Keck* (1974), 56 Ill. 2d 508, 514, 309 N.E.2d 217, 220.

## II

■ Lovecchio also contends that reversible error occurred when the trial court allegedly concluded that Lovecchio was guilty of "civil contempt."[5] Lovecchio asserts that if he were to be found guilty of contempt, the nature of the contempt would be criminal and not civil. We disagree. We conclude that the contempt here was civil in nature.

Civil contempt differs from criminal contempt, not in the character of the contumacious conduct involved, but in the purpose of the citation proceeding. While a criminal contempt proceeding is punitive in nature, having the intent to punish for a past contumacious act, a civil contempt proceeding is coercive in nature, its intent being to obtain compliance with the court's order or judgment. *People v. Denson* (1975), 59 Ill. 2d 546, 322 N.E.2d 464.

In *Marcisz v. Marcisz* (1976), 65 Ill. 2d 206, 208-09, 357 N.E.2d 477, 479, the court, quoting from *People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill. 2d 407, 409-10, 173 N.E.2d 417, 418, defined and distinguished civil and criminal contempt as follows:

> "Contempt proceedings, while usually called civil or criminal, are, strictly speaking, neither. They may best be characterized

---

[5]Again we note the court's order of August 3, 1981, found the contempt to be "direct contempt." No reference is made to the contempt being civil or criminal in nature.

as *sui generis,* and may partake of the characteristics of both. [Citations.] Proceedings in the nature of criminal contempt have been defined as those directed to preservation of the dignity and authority of the court, while it has been said that civil contempts are those prosecuted to enforce the rights of private parties and to compel obedience to orders or decrees for the benefit of opposing parties. [Citations.] These principles, while seemingly plain and adequate, are most difficult to apply. The line of demarcation in many instances is indistinct and even imperceptible. [Citation.] A further guide may be found in the purpose of punishment. Imprisonment for criminal contempt is inflicted as a punishment for that which has been done, whereas imprisonment for civil contempt is usually coercive and, as was said in the case of *In re Nevitt* (8th Cir.), 117 Fed. 448, 461, 'he [the contemnor] carries the key of his prison in his own pocket.' "

Civil contempt has been defined as "an attempt by a court to compel compliance with its orders." (*County of Cook v. Lloyd A. Fry Roofing Co.* (1974), 59 Ill. 2d 131, 135, 319 N.E.2d 472, 475.) It is clear that the contempt order entered by the trial court in this case is civil in nature because its purpose was to compel Lovecchio's compliance with the trial court's production order.

"A civil contempt decree must provide defendant with the keys to his cell, enabling him through compliance with the terms of the command to purge himself of contempt." (*Continental Illinois National Bank v. Brach* (1979), 71 Ill. App. 3d 789, 792-93, 390 N.E.2d 373, 375-76, citing *People v. Redlich* (1949), 402 Ill. 270, 83 N.E.2d 736, and *Welding Industrial Supply Co. v. Northtown Industries, Inc.* (1978), 58 Ill. App. 3d 625, 374 N.E.2d 1002.) Here, Lovecchio was compelled to produce the airline tickets as ordered by the trial court, and by doing so he could obtain his immediate release from custody. The sanction imposed was coercive: it sought to compel obedience to the court's order for the benefit of the opposing litigant. The sanction was not punitive; it was instituted not to vindicate the authority and dignity of the court but rather to obtain compliance with the court's order. *City of Chicago v. Chicago Fire Fighters Union* (1981), 99 Ill. App. 3d 583, 425 N.E.2d 1071; *People ex rel. Scott v. Police Hall of Fame, Inc.* (1979), 69 Ill. App. 3d 501, 387 N.E.2d 856.

It is thus clear that the contempt proceedings were civil in nature and that the court actually found Lovecchio guilty of "indirect civil contempt." As noted, the fact that the trial judge incorrectly designated the contempt as "direct [civil] contempt" is not reversible error.

The findings and sanction are based on the evidence presented in their support and not on the nomenclature used to describe them.

## III

As previously set forth, Lovecchio also claims that he could not be found guilty of contempt because he had no intention to act in a contemptuous manner, and additionally that he could not comply with the trial court's production order because he had no present knowledge of the whereabouts of the airline tickets and was unable to produce them. He asserts that an alleged contemnor cannot be held in contempt when he is unable to comply through no fault of his own. (*In re Estate of Shlensky* (1977), 49 Ill. App. 3d 885, 364 N.E.2d 430.) However, the issues of intent and of impossibility of performance are to be decided by the trier of fact based upon the trier's evaluation of all the evidence presented. The determination of which witness is to be believed is singularly within the province and determinative scope of the trier of fact. (See *People v. Randall* (1980), 89 Ill. App. 3d 406, 411 N.E.2d 1017.) The trial judge was entitled to disbelieve Lovecchio's testimony. Further, the trial judge was not obligated to search for a series of potential explanations compatible with Lovecchio's innocence. *People v. Pitchford* (1976), 39 Ill. App. 3d 182, 350 N.E.2d 170.

■ Where, as in this case, the evidence was merely conflicting and where an evaluation of credibility or the weight of the evidence was made by the trial judge, a court of review has no right to substitute its judgment for that of the trier of fact (*People v. Droskiewcz* (1978), 64 Ill. App. 3d 69, 380 N.E.2d 1014), unless the evidence is so unreasonable, improbable, or unsatisfactory as clearly to require a different conclusion. Our review of the record fails to disclose a legal basis for this court to determine that the conclusion reached by the trial judge on the issue of contempt was erroneous. (*People v. Norris* (1969), 118 Ill. App. 2d 406, 254 N.E.2d 304.) The finding of contempt was a matter of fact determined by the trial judge and it cannot be disturbed on this review unless the trial court was guilty of a clear abuse of discretion. (*Frank B. Hall & Co. v. Payseur* (1981), 99 Ill. App. 3d 857, 425 N.E.2d 1002.) Based on the record before us we do not find an abuse of discretion. Necessarily, we conclude that contempt of court was established. *People ex rel. Fahner v. Colorado City Lot Owners & Taxpayers Association* (1982), 108 Ill. App. 3d 266, 438 N.E.2d 1273.

■ We are aware that Lovecchio also suggests that since only one airline ticket was validated and had some minimal value, his failure to abide by the trial court's production order should be excused.

Lovecchio asserts that "production [of the airline tickets] would have given no measurable gain to the plaintiff except to replenish its office shelf inventory of blank tickets." We find no merit in this argument.

## IV

Lovecchio also contends that he was denied his due process rights and that as a consequence the contempt findings and sanction must be set aside. We disagree.

■ The record clearly discloses the filing of pleadings setting forth the charges asserted against Lovecchio. Responsive pleadings and supportive memoranda were filed by Lovecchio. The contest on the issue of contempt was presented in significant detail with a number of witnesses testifying and being cross-examined vigorously by Lovecchio's counsel. Lovecchio himself testified both as an adverse witness and as a witness on his own behalf. Where the hearings became somewhat informal in nature and an in-chambers conference took place, not only was there no objection voiced to the proceedings but, in fact, Lovecchio's counsel requested the in-chambers conference. Lovecchio was given adequate notice of the proceedings, a right to respond, a full hearing, and the rights to counsel and to confrontation. (*People v. Pincham* (1976), 38 Ill. App. 3d 1043, 350 N.E.2d 67.) Our study of the record fails to disclose any basis for a claim that Lovecchio was denied any of his due process rights. See *Marcisz v. Marcisz* (1976), 65 Ill. 2d 206, 357 N.E.2d 477; *People v. Martin-Trigona* (1980), 94 Ill. App. 3d 519, 418 N.E.2d 763; *In re Estate of Shlensky* (1977), 49 Ill. App. 3d 885, 364 N.E.2d 430.

## V

Additionally, Lovecchio claims that "the court's sentence of thirty days in jail was improperly imposed since the defendant [Lovecchio] was not afforded an opportunity to present any of the considerable evidence available in mitigation ***."

■ We have reviewed the record and find no support for the charge that Lovecchio was denied the right to present evidence in mitigation following the trial court's finding of contempt. In fact, no request to submit matters in mitigation was made by Lovecchio. Having failed to request a mitigation hearing, defendant is considered to have waived the right to that hearing. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Martin-Trigona* (1980), 94 Ill. App. 3d 519, 418 N.E.2d 763.) We also note that matters of mitigation were first raised by Lovecchio in connection with his petition filed on November 6, 1981, seeking bail. We find no merit to Lovecchio's claim

that he was denied a right to present evidence in mitigation following his being found in contempt of court.[6]

## VI

We now address the effect of circumstances which developed while this appeal was pending as set forth in motions filed in this court. It would appear that in December 1981 Underwater Adventure Tours, Ltd., filed for bankruptcy protection, and the bankruptcy judge ordered a stay of other proceedings against the debtor. (11 U.S.C.A. sec. 362(a) (1979).) However, on January 13, 1982, the circuit court of Cook County dissolved the injunction it had issued on June 19, 1981, and dismissed the complaint of Sunset Travel, Inc., and Underwater Adventure Tours, Ltd., with prejudice. Thereafter the bankruptcy judge found that the circuit court's dissolution order of January 13, 1982, was void against Underwater Adventure Tours, Ltd., because of the Federal court's prior stay order.

We now consider the ramification of these developments.

The dismissal of Sunset Travel, Inc., could have a potential importance in eventual resolution of the contempt proceedings. (*People's Housing Development Corp. v. City of Poughkeepsie* (S.D.N.Y. 1976), 425 F. Supp. 482, 495; see also *People ex rel. Scott v. Police Hall of Fame, Inc.* (1979), 69 Ill. App. 3d 501, 504-05, 387 N.E.2d 856.) However, we do not believe that the matters presented to us justify setting aside the contempt order in this case.

■ Generally, collateral disputes between third-parties are not affected by bankruptcy proceedings unless settlement of that collateral matter is necessary to completely administer the bankrupt's estate. (*In re Shirley Duke Associates* (2d Cir. 1979), 611 F.2d 15, 18.) The record in the present case indicates that the corporations in question were closely related and in fact were basically controlled by the same individual. This interrelationship could result in the eventual determination that the bankrupt's estate might be affected by the action of Sunset Travel, Inc., and Lovecchio. We therefore do not have before

---

[6]In passing we note that the trial court's sanction of 30 days confinement appears to be punitive in nature; mitigation evidence would only be relevant in a punitive sanction setting. Here, however, Lovecchio could avoid confinement by complying with the trial court's "coercive" order. It would have been legally sufficient and less confusing if the trial court merely invoked confinement until compliance with the court's order or the further order of court. It would then have been clear that the nature of the contempt involved was civil (coercive) rather than criminal (punitive). Under these circumstances a sentence for a fixed term would be inappropriate. See *City of Park City v. Brosten* (1974), 24 Ill. App. 3d 442, 321 N.E.2d 15.

us a sufficient record upon which we might conclude that the trial court properly dismissed the action as to Sunset Travel, Inc.

■■ This case presents a situation where Lovecchio has clearly attempted to frustrate and obstruct an orderly judicial proceeding. He obviously was in possession of the airline tickets which he was commanded to produce, yet he denied such possession despite overwhelming evidence to the contrary. However, this dispute has lingered for almost two years, and we believe that the effects of the contempt sanction may have lessened during the interim. Accordingly for that reason and in view of Lovecchio's incarceration for three days pending his release on a stay bond, we believe the contempt sanction should be modified to 27 days of work-release weekend incarceration or until the tickets are produced. Supreme Court Rule 366(a)(5) (73 Ill. 2d R. 366(a)(5)); *cf. City of Park City v. Broston* (1974), 24 Ill. App. 3d 442, 448, 321 N.E.2d 15.

The contempt order is therefore affirmed as modified.

Affirmed as modified.

JOHNSON, J., concurs.

JUSTICE JIGANTI, dissenting:

The trial judge found the defendant, Robert Lovecchio, in contempt of court because he failed to produce the airline tickets. The defendant claimed that he did not have possession of the tickets. The trial court did not believe Lovecchio and neither do we. As the opinion states, Lovecchio "clearly attempted to frustrate an orderly judicial proceeding."

The effect of the trial court's order was to place the keys to the jail in the defendant's pocket. The order provided that the defendant would have the right to immediate release upon purging himself of contempt by producing the airline tickets. However, because the dispute has languished for almost two years, the majority now reasons that "the effects of the contempt sanction may have lessened during the interim." I fail to understand why the contempt sanction has been diminished by a lapse of time. Lovecchio's contumacious behavior deserves the sanction originally meted out by the trial court.