THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
I.W.I., INC., *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 86—770

Opinion filed November 30, 1988.

George P. Lynch and Holland C. Capper, both of Chicago (M. Jacqueline Walther, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., James E. Fitzgerald, and Kevin J. Moore, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendants, I.W.I., Inc., Wellco Chemical, Inc., Itasco of Illinois, Inc., and Glenn Wellman (IWI), appeal from an order of the circuit court of Cook County holding all defendants in contempt of court. On appeal, IWI argues that (1) it was deprived of due process by the summary procedure used by the court in finding it in contempt of court; (2) the court's order that it produce various documents in response to certain subpoenas *duces tecum* was void as to preclude a finding of contempt; and (3) the court lacked jurisdiction to modify the penalty imposed in the contempt order after IWI had filed a notice of appeal. We affirm in part, vacate and remand in part.

IWI defendants are corporations which, as their business, clean, repair and test tote bins. Tote bins are large stainless steel and other material storage or transportation tanks used to transport paint, ink, grease and other material. IWI was served with various subpoenas *duces tecum* issued by the grand jury of the circuit court of Cook County. These subpoenas sought production of IWI's corporate records detailing IWI's operation from "January 1, 1983 until the present." IWI filed a motion to quash the grand jury subpoenas arguing that the subpoenas were overly broad and oppressive. On October 9, 1985, Judge Richard J. Fitzgerald denied IWI's motion and ordered IWI to comply with the subpoenas on November 4, 1985.

Without complying with the order to produce documents, IWI filed another motion to quash the subpoenas. In this motion, IWI argued that any proceeding on the subpoenas before Judge Fitzgerald was collaterally estopped by an order entered on November 21, 1985, in a civil proceeding by Judge David J. Shields. IWI asserted that because Judge Shields had determined that the government's complaint for injunctive relief under Title V of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1001 *et seq.*) was insufficient, the State was collaterally estopped from criminally prosecuting IWI in relation to the storage, accumulation or disposal of hazardous waste. In denying this second motion to quash, the court, on December 16, 1985, ordered compliance by December 26, 1985, and cautioned that any materials received under the subpoenas were to be used only in the grand jury investigation.

On January 13, 1986, the State informed Judge Fitzgerald that IWI did not intend to comply with the order to produce documents. The State filed a verified petition for a rule to show cause why IWI should not be held in contempt and a hearing was set for January 17. On January 17, IWI appeared and filed a motion to quash the

State's petition. At a later hearing on the State's petition, IWI argued that it had not complied with the order directing it to furnish documents to the grand jury that were commanded by the subpoenas because: (1) the petition was vague and indefinite; (2) the proceeding on the State's petition had denied them due process of law; (3) the petition had defective verification; and (4) compliance with the subpoenas would have an oppressive effect on its business.

On March 25, 1986, the court denied IWI's motion to quash the State's rule to show cause and found that IWI was not justified in its reasons for refusing to comply with the subpoenas. IWI was held in contempt of court and the court imposed a fine of $500 for each additional day of noncompliance. IWI informed the court that it would file a notice of appeal and a motion to stay the fine pending appeal. IWI filed its notice of appeal on March 25, 1986. On April 7, 1986, the court issued an order that the $500 fine would run "from March 25, the date that we entered the order, until final disposition."

IWI first argues that it was denied due process of law in the summary procedure used by the court in finding it in contempt of court. To support its position, IWI contends that it was held in indirect criminal contempt of court and therefore it was entitled to all of the safeguards afforded to criminal proceedings. We find IWI's position without merit.

We initially note that the court did not specify whether it was finding IWI in direct or indirect contempt of court. Nor did the court specify whether it was finding IWI in criminal or civil contempt of court. Based upon our reading of the record and the circumstances therein, we conclude that IWI was found in direct civil contempt of court.

■ Contempt of court is defined as contumacious "verbal or nonverbal conduct calculated to embarrass, hinder, or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of justice into disrepute." (*Sunset Travel, Inc. v. Lovecchio* (1983), 113 Ill. App. 3d 669, 674, 447 N.E.2d 891, 895.) Contempt of court may also result from failure to abide by the terms of a court order or judgment. Furthermore, such conduct may be tried as direct or indirect contempt depending upon the circumstances. *Sunset Travel, Inc.*, 113 Ill. App. 3d at 674, 447 N.E.2d at 895.

A judge may find a party in direct contempt of court where that party's contumacious conduct occurs in the physical presence of the judge or while the court is performing its judicial functions. (*In re*

*Marriage of Wilde* (1986), 141 Ill. App. 3d 464, 469, 490 N.E.2d 95, 99.) The trial judge must be personally aware of this conduct, and no evidentiary hearing is necessary to ascertain the facts supporting a finding that the conduct is of a contemptuous character. Thus, because the contumacious conduct is committed in the presence of the court, the party performing such may be adjudged and sanctioned in a summary manner. *City of Chicago v. Chicago Fire Fighters Union, Local No. 2* (1981), 99 Ill. App. 3d 583, 590, 425 N.E.2d 1071, 1076.

On the other hand, contumacious conduct that occurs out of the presence of the judge is characterized as indirect contempt. With indirect contempt, its establishment is dependent upon extrinsic evidence as proof of facts of which the court has no personal knowledge. (*People v. L.A.S.* (1986), 111 Ill. 2d 539, 543, 490 N.E.2d 1271, 1273.) In this instance, it is required that the party accused of committing indirect contempt of court be granted all procedural due process rights so that he is given a reasonable opportunity to defend against the charge. *People v. Skar* (1964), 30 Ill. 2d 491, 494-95, 198 N.E.2d 101, 102-03.

■ Civil contempt is distinguished from criminal contempt not by conduct, but in the purpose of the citation proceeding. A criminal contempt proceeding is punitive in nature, punishing a party for a past contumacious act, while a civil contempt proceeding is coercive in nature. The intent of a civil contempt proceeding is to obtain compliance with a court's order or judgment. *Sunset Travel, Inc. v. Lovecchio* (1983), 113 Ill. App. 3d 669, 676, 447 N.E.2d 891, 896.

■ In the instant case, it is clear that the contempt citation was a direct civil one. IWI appeared before the court on at least four occasions. IWI appeared before the court on October 9, 1985, and was ordered to comply with the grand jury subpoenas on November 4, 1985. IWI appeared before the court on December 16, 1985, and was again ordered to comply with the grand jury subpoenas on December 26, 1985. On January 13, 1986, the State filed a motion for a rule to show cause why IWI should not be held in contempt of court. A hearing was held on January 17, 1986, in which IWI appeared, was represented by counsel and filed a motion to dismiss the State's petition. On March 25, 1986, IWI appeared before the court and argued its motion to quash the State's petition. The court denied IWI's motion and ordered IWI to pay $500 for each day of noncompliance.

In light of these facts, IWI cannot be heard to argue that its contempt was an indirect criminal citation. The court's citation was

designed to compel IWI's compliance with its repeated orders to produce the subject documents of the subpoenas. Moreover, after several hearings and motions made by IWI with respect to these subpoenas, the trial judge was personally aware of the circumstances of this case. There was no need for extrinsic evidence to establish facts and proofs outside of the court's knowledge upon which the court's citation was based. Therefore, IWI's argument that the court erred in conducting a summary proceeding is without merit.

IWI next argues that the court's order that it produce documents in response to the grand jury subpoena *duces tecum* is void. To support this contention, IWI argues that (1) the court's order that IWI produce books and records in connection with a pending criminal investigation is essentially an order for discovery and the court has no authority to order discovery when no charges are pending; (2) the requests in the subpoenas are overbroad and unreasonable and thus by their terms constitute an unreasonable search and seizure; and (3) the order is an infringement on possible fifth amendment rights of Wellman. We disagree.

■■ ■ IWI characterizes the court's order to comply with the grand jury's subpoena as an order for discovery. This characterization is unfounded in light of the fact that courts are empowered to take actions necessary to enforce subpoenas of the grand jury. (*Universal Credit Co. v. Antosen* (1940), 374 Ill. 194, 199, 29 N.E. 96, 98.) As our Illinois Supreme Court stated in *People v. Rezek* (1951), 410 Ill. 618, 103 N.E. 127:

> "The grand jury is an integral part of the criminal court, as distinguished from any particular judge of the court, and any judge of the criminal court has the power to enter judgments against those in contempt of the court through their failure to respond to *subpoenas duces tecum* returnable before the grand jury." 410 Ill. at 627, 103 N.E. at 131.

Moreover, in Illinois, the grand jury has broad investigative powers. (Ill. Rev. Stat. 1985, ch. 38, par. 112—4(b).) Thus, with respect to IWI's claim that the subpoenas constituted an unreasonable search and seizure, that determination is made by balancing the public interest against the individual's need for private security. (*People v. Jackson* (1983), 116 Ill. App. 3d 430, 435, 452 N.E.2d 85, 89.) Where the government attempts to compel disclosure of private records, there must be a balance of a person's privacy interest in nondisclosure against the interest of the public in having effective grand jury investigative powers. However, if a grand jury investigation does infringe upon a person's protected right of privacy, the reason-

ableness of that intrusion is then tested by the validity of the subpoena. 116 Ill. App. 3d at 435, 452 N.E.2d at 89.

To ascertain whether a subpoena is valid and thereby a reasonable intrusion it must be determined that (1) the document sought is relevant to the inquiry and (2) the document to be produced is adequate but not excessive for the purpose of the relevant inquiry. (*Oklahoma Press Publishing Co. v. Walling* (1946), 327 U.S. 186, 209, 90 L. Ed. 614, 630, 66 S. Ct. 494, 506.) When these two requirements are applied to the subpoena at issue here, we find that the subpoena and its request are not unreasonable and overbroad. The records sought from IWI would detail, *inter alia,* (1) purchases of substances such as oil, minerals and cleaning agents; (2) sales of tote bins, tanks and chemicals; (3) licenses issued by the United States Environmental Protection Agency and the Illinois Environmental Protection Agency; (4) tote bins that have been cleaned and repaired; (5) names of companies transporting tote bins and substances for IWI; (6) names and addresses of IWI employees, other IWI branches or subsidiaries; (7) the corporate charter; and (8) listings of bank accounts. The record indicates that the subject of the grand jury investigation involved the storage and disposal of hazardous waste. The records subpoenaed are obviously relevant to this investigation. Therefore, we conclude that the grand jury's subpoena *duces tecum* was relevant, not excessive and therefore valid.

■ IWI also asserts that to the extent that the subpoenas request personal banking information on Wellman, they represent a possible infringement of his fifth amendment rights. We believe that *United States v. McCollum* (N.D. Ill. 1987), 651 F. Supp. 1217, *aff'd* (7th Cir. 1987), 815 F.2d 1087, is dispositive of this argument.

In *United States v. McCollum,* the court addressed the issue of whether a subpoena *duces tecum* requiring a defendant to produce checks, check registers, and bank accounts owned by defendant violated that defendant's fifth amendment protection against self-incrimination. In answering this question in the negative, the court held that fifth amendment protections no longer "extend to financial records such as checks, check registers or information reflecting withdrawals from accounts." (651 F. Supp. at 1221.) The court, quoting from *United States v. Doe* (1984), 465 U.S. 605, 610-11, 79 L. Ed. 2d 552, 559, 104 S. Ct. 1237, 1241, stated, "a subpoena that demands production of documents 'does not compel oral testimony; nor would it ordinarily compel the [defendant] to restate, repeat, or affirm the truth of the documents sought.' " The court noted that the testimonial aspects of producing documents compelled by subpoena

may be privileged under the fifth amendment. However, the court stated that "if the party asserting the privilege has voluntarily compiled the document, no compulsion is present and the contents of the document are not privileged." (651 F. Supp. at 1220-21.) In comparing business records to private records, the *McCollum* court reasoned that "[i]f the Fifth Amendment does not protect the contents of voluntarily prepared business records held by the owner of a sole proprietorship because no compulsion was involved in their creation, it is difficult to see why the contents of an individual's voluntarily created private financial records should be treated differently." (651 F. Supp. at 1221.) The court stated that if any protections existed under the fifth amendment for private papers, such protections would only exist where compelled disclosure would break "the heart of privacy." Thus, the court concluded that while the contents of certain private personal documents, such as personal letters or diaries, may remain protected under the fifth amendment or other constitutional provisions, the contents of financial records such as checks, check registers or other records indicating withdrawals from financial accounts are not. (651 F. Supp. at 1222.) Therefore, IWI's argument that Wellman's fifth amendment rights may be violated must fail.

IWI next argues that the court lacked jurisdiction to enter the order that was entered on April 7, 1986, several days after IWI had filed a notice of appeal. The portion of the order that IWI objects to involves the imposition of the $500-a-day fine and its accrual during the pendency of this appeal. IWI argues that the portion of the order delineating the fine for its noncompliance with the subpoenas does not reflect the intention expressed by the court on March 25 to have the fine stayed during this appeal. The State's position is, however, that the court's order was entered *nunc pro tunc,* thus the court maintained jurisdiction to enter the order.

■ We initially note that once a notice of appeal is filed, the trial court may not enter an order which would have the effect of interfering with review of the order or judgment from which the appeal has been taken. (*In re Marriage of Giammerino* (1981), 94 Ill. App. 3d 1058, 1061, 419 N.E.2d 598, 600.) However, a circuit court has the power to enter an order *nunc pro tunc* at any time to correct a written record of a judgment so that it conforms with the judgment in fact rendered by the court. (*Gagliano v. 714 Sheridan Venture* (1986), 144 Ill. App. 3d 854, 857, 494 N.E.2d 1182, 1184.) A *nunc pro tunc* order must be based upon some memorandum of record or upon something of record before the trial court and may not

be used for supplying omitted judicial action, correcting judicial errors under the pretense of correcting clerical errors or curing a jurisdictional defect. (*Rauscher v. Albert* (1985), 138 Ill. App. 3d 799, 804-05, 485 N.E.2d 1362, 1366.) Thus a court's authority in entering an order *nunc pro tunc* is limited to incorporating into the record something which was actually previously done by the court but inadvertently omitted by clerical error. *In re Marriage of Hirsch* (1985), 135 Ill. App. 3d 945, 954, 482 N.E.2d 625, 631-32.

■ Here, the record reflects that on March 25, 1986, the court found IWI in contempt and ordered a fine of $500 a day for each day of noncompliance. IWI informed the court of its intention to immediately file a notice of appeal as well as a motion to stay the fine pending appeal. To this statement made by IWI, the court responded, "Very well." On March 25, 1986, IWI filed its notice of appeal with this court. Subsequently on April 7, 1986, the court entered an order holding IWI in contempt and finding that only the payment of the fine would be stayed and not the accrual thereof.

Based upon our reading of the record, we believe that the court's order of April 7 supplied a judicial action that was clearly omitted on March 25. The portion of the April 7 order to which IWI objects cannot be construed as a correction of a clerical error or a gesture to make the "record speak now for what happened then." Because the trial court is not vested with authority to interfere with a judgment from which an appeal is taken, the trial court did not have jurisdiction to enter the order of April 7, 1986.

Accordingly, the trial court's order of March 25 is affirmed. The order of April 7 is vacated and set aside and this case is remanded for further proceedings consistent with what is stated herein.

Affirmed in part; vacated and remanded in part.

WHITE, P.J., and FREEMAN, J., concur.